IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRANDON RUFF<br>      Plaintiff<br>vs.<br>THE CITY OF PHILADELPHIA, PHILADELPHIA POLICE OFFICER LONG, BADGE # UNKNOWN POLICE SERGEANT BACHMAYER, BADGE # UNKNOWN, PHILADELPHIA POLICE OFFICER ECKELS, BADGE # UNKNOWN, PHILADELPHIA POLICE OFFICER BEDNARZ, BADGE # UNKNOWN, PHILADELPHIA POLICE OFFICER FANT, BADGE # UNKNOWN, PHILADELPHIA POLICE OFFICER THOMPSON, PHILADELPHIA POLICE OFFICER MONACHELLO, BADGE # UNKNOWN, individually and as police officers for the City of Philadelphia<br>      Defendants | : <br>: <br>: <br>: <br>: <br>: <br>: <br>: C.A. NO. 14-4940<br>: <br>: <br>: <br>: **FILED**<br>: <br>: FEB **2 7** 2015<br>: <br>: MICHAEL E. KUNZ, Clerk<br>: By_____ Dep. Clerk |

## SECOND AMENDED COMPLAINT

### I. JURISDICTION

1. This action is brought pursuant to 42 U.S.C. §§ 1331 and 1343(1),(3),(4) and the aforementioned statutory provision.

### II. PARTIES

2. Plaintiff, Brandon is an adult male who was at all times relevant to its Complaint, a resident of Philadelphia, Pennsylvania. Mr. Ruff is and was at the time of the incident, employed as a police officer at the rank of Sergeant for the City of Philadelphia.

3. Defendant City of Philadelphia is a City of the First Class in the Commonwealth of Pennsylvania and at all times relevant hereto operated under the color of state law in creating and maintaining a Police Department, was the employer of all Defendants and

had the responsibility of adopting policies, implementing procedures and practices which would create an environment whereby citizens would be safe from police abuse.

4. Defendant Sergeant Bachmayer, Badge number unknown, is and was at all times relevant to this Complaint, a police officer for Philadelphia Police department and acting under the color of state law. She is being sued in both her individual and official capacities.

5. Defendant Philadelphia Police Officer Long, Badge number unknown, is and was at all times relevant to this Complaint, a police officer for Philadelphia Police department and acting under the color of state law. She is being sued in both her individual and official capacities.

6. Defendant Philadelphia Police Officer Eckels, Badge number unknown, is and was at all times relevant to this Complaint, a police officer for Philadelphia Police department and acting under the color of state law. He is being sued in both his individual and official capacities.

7. Defendant Philadelphia Police Officer Bednarz, Badge number unknown, is and was at all times relevant to this Complaint, a police officer for Philadelphia Police department and acting under the color of state law. He is being sued in both his individual and official capacities.

8. Defendant Philadelphia Police Officer Fant, Badge number unknown, is and was at all times relevant to this Complaint, a police officer for Philadelphia Police department and acting under the color of state law. He is being sued in both his individual and official capacities.

9. Defendant Philadelphia Police Officer Thompson, Badge number unknown, is and was at all times relevant to this Complaint, a police officer for Philadelphia Police department and acting under the color of state law. He is being sued in both his individual and official capacities.

10. Defendant Philadelphia Police Officer Monachello, Badge number unknown, is and was at all times relevant to this Complaint, a police officer for Philadelphia Police department and acting under the color of state law. He is being sued in both his individual and official capacities.

### III. FACTS

7. On August 3, 2014 at 6:30 p.m. Plaintiff Sergeant Brandon Ruff, a Philadelphia Police Officer since 2006 was contacted by a friend who stated that he wanted to turn in some firearms that he obtained via buying them from individuals in the neighborhood in a proactive attempt to stop violence. The Plaintiff's friend informed the Plaintiff that he was creating an organization for that purpose.

8. Plaintiff met with his friend and was handed a bag with three (3) firearms in it from the rear passenger compartment floor area of his friend's vehicle.

9. At the scene Plaintiff checked the surrendered firearms to make sure there was no ammunition in the firearms.

10. Plaintiff then drove to the 35th Police District to turn in the firearms.

11. While waiting in the lobby of the 35th District, Defendant Philadelphia Police Officer Long approached the window and asked how she could help Plaintiff. Plaintiff responded by informing the Defendant that he was there to "turn some firearms in".

12. Defendant Long began asking questions about whom the owner of the firearms

was and who the Plaintiff got the firearms from.

13. Plaintiff informed Defendant Long that he obtained the firearms from his friend to turn in under the "no questions asked" policy initiated by the Defendants.

14. Defendant Long began berating Plaintiff and Plaintiff requested the presence of a supervisor.

15. Defendant Long slammed the window shut and walked back towards the desk. No supervisor came out.

16. Another police officer standing there, Defendant Doe # 1 asked Plaintiff where the firearms were and Plaintiff handed her the bag and told her that the firearms were already checked for ammunition. Defendant Doe # 1 grabbed the bag and placed it on the counter and began asking Plaintiff questions about where Plaintiff obtained the firearms. Plaintiff informed Defendant Doe # 1 of the identity of the person he got the firearms from. Defendant Doe # 1 demanded to see Plaintiff's I.D. Plaintiff informed her that he did not have a state I.D. on him but had his work I.D instead.

17. At that time, Plaintiff informed a female police officer who was also standing there that he had to make a phone call outside because he did not have service inside the building. Plaintiff then went outside to make the call when suddenly someone shouted "there he is" and then a voice shout "35 TOM".

18. Defendant Doe # 2 then came from behind Plaintiff and grabbed his right hand placing Plaintiff's hands behind his back.

19. At this time, approximately 5-7 police officers confronted Plaintiff shouting at him as Defendant Doe # 2 had him in custody. Plaintiff informed the officers that he was a 3-6-9 (code for police officer) and that his I.D. was in his pocket.

20. Defendant Doe # 3 who was standing in front of Plaintiff shouted, "I'll f**king taze you". Plaintiff told these officers that he had already provided the identity of the person who gave him the firearms.

21. The police officers continued to shout at Plaintiff while Defendant Doe # 3 placed another Taser against Plaintiff's chest while another officer, Defendant Doe # 4 pressed a Taser against Plaintiff's right rib cage.

22. Plaintiff was then patted down and searched.

23. Upon spotting Plaintiff's registered off duty weapon in a holster on his hip; Defendant Sergeant Doe stated "Is that a gun on your hip". Plaintiff replied that it was and Defendant Sergeant Doe stated "why the hell would you come into a police station with a gun on your hip, where is your permit to carry". Plaintiff informed the Defendant Sergeant that his I.D. identifying him as a police officer was his permit to carry.

24. Defendants then confiscated Plaintiff's firearm and escorted him to the roll call room behind the locked door in the lobby.

25. Once inside this room, an officer told him to sit down whereby Plaintiff told Defendant Doe # 5 "No, I'm upset I don't want to sit down". Defendant Doe # 5 then began kicking at the back of Plaintiff's legs in an attempt to sweep his legs to make him fall onto the ground. Plaintiff then sat down.

26. Just prior to sitting down, Defendant Sergeant Doe ordered officers to again search the Plaintiff. Plaintiff asked why he was being search and asked if he was being arrested. Defendant Sergeant Doe informed Plaintiff that he was under arrest and being "locked up for VUFA".

27. Plaintiff was searched and his Municipal Police Officer Education and Training

Commission card and Philadelphia Police I.D. was taken out of his pocket.

28. The officer then handed the I.D.s to Defendant Sergeant Doe and she shouted "you are a piece of f**king sh*t, you are scum, and you are a supervisor. You are a disgrace to me, this department and the 35th District. You do not belong on this job". Defendant Sergeant Doe left, came back into the room moments later and threw Plaintiff's IDs across the room at him along with his cell phone.

29. Defendant Sergeant Doe then informed the Lieutenant on duty that she was calling Internal Affairs and Night Command because something "has to be done about this". The time was about 6:45 p.m.

30. Plaintiff contacted his own Lieutenant and informed him of the incident along with a brief text to his Captain.

31. Plaintiff sat in this room for almost an hour and was then told that Internal Affairs was sending a team out to investigate. After more than three (3) hours, a Lieutenant from Internal Affairs came into the room and asked Plaintiff his name and date of birth. He then left.

32. Plaintiff remained in the room unable to leave for several more hours and at 12:15 a.m., Plaintiff began feeling very weak and ill so he informed an officer in the room of his condition and requested the officer get the Corporal. The officer informed the Corporal that Plaintiff was feeling ill and his blood sugar was dropping fast. The Corporal offered to have him transported to the hospital, but Plaintiff declined.

33. At approx. 1:00 a.m., two (2) Lieutenants came into the room where Plaintiff was being held along with another officer who had Plaintiff's firearm in his possession. Plaintiff was told to sign the property receipt to take custody of his firearm and

ammunition. Plaintiff complied. The two Lieutenants then told him that he had the right to remain silent and that he was being transferred effective immediately to the DPR unit.

34. Plaintiff inquired why he was being transferred to Differential Police Response (DPR) and was informed that he was now under investigation.

35. The two investigators then followed Plaintiff home and waited outside while he retrieved his service weapon and ammunition. Once he relinquished those items to them he was instructed to sign two (2) documents; one which deemed him powerless as a police officer and the other acknowledging that he was relinquishing his service weapon to Internal Affairs pending investigation.

36. On August 4, 2014, Plaintiff admitted himself into the emergency room at Chestnut Hill Hospital for injuries he sustained during his arrest and detention.

37. As a result of this incident Plaintiff suffered two sprained wrists and two shoulder sprains.

38. On August 4, 2014, Plaintiff was disciplined by being taken off the street and placed on desk duty on DPR.

39. On August 25, 2014, Plaintiff filed his initial complaint alleging violations of his First, Fourth and Fourteenth Amendment rights. Plaintiff remained on DPR after filing his complaint.

40. On February 2, 2015, as a result of the above described incident and Plaintiff's pending civil and constitutional rights case against Defendants, Plaintiff was arrested again and charged with one count of False Identification to Law Enforcement Authorities. Plaintiff has been terminated from employment.

41. The foregoing conduct of the Defendants, acting under the color of state law,

was undertaken in concert and conspiracy and as part of an effort to assault, imprison, unlawfully arrest, unlawful search and seizure, maliciously prosecute, retaliate, prevent him from engaging in free speech and disciplined Plaintiff from employment and otherwise deprive Plaintiff of his civil and constitutional rights including Plaintiff's rights, privileges and immunities under the First, Fourth and Fourteenth Amendments to the United States Constitution and the laws of the Commonwealth of Pennsylvania.

42. In engaging in free speech as a private citizen regarding matters of public concern, as described herein, as well as filing a civil and constitutional rights claim against the Defendants, Plaintiff engaged in expression protected by the First Amendment to the Constitution of the United States. Plaintiff's detention and arrest was simply a pretext for disciplining Plaintiff as a police officer by terminating his employment and charging and arresting him well after a lawsuit was filed, in retaliation for his engaging in protected speech and to prevent him from engaging in such speech in the future, all of which would have been personally and politically embarrassing to all Defendants.

43. At no time did Plaintiff commit any offense against the laws of the Commonwealth of Pennsylvania for which an arrest may be lawfully made. At no time did Plaintiff strike, attempt to strike or intend to strike any of the Defendant police officers or any other police officer. At no time did Plaintiff harass, threaten, resist arrest in any way, commit any illegal acts or engage in any conduct, which in any way justified the actions of all Defendant police officers.

44. As a direct and proximate result of the Defendants' actions, Plaintiff suffered serious physical injury, including sprains of both wrists and sprains in both shoulders.

45. As a direct and proximate result of the Defendants' actions, Plaintiff suffered

and continues to suffer serious mental anguish, psychological and emotional distress, and pain and suffering, some or all of which may be permanent.

46. As a direct and proximate result of the Defendants' actions, Plaintiff has suffered and continues to suffer damage to his personal, business reputation and loss of employment.

47. As a direct and proximate result of the Defendants' actions, Plaintiff was arrested, detained, subjected to physical and verbal abuse without just or probable cause and retaliated against for engaging in free speech as a private citizen which resulted in his discipline, termination from employment and arrest as a Philadelphia Police Officer.

48. At no time did plaintiff pose a threat to Defendant Does or to others.

49. The actions of Defendants were undertaken in a menacing and arbitrary manner, designed to cause Plaintiff fear, distress and embarrassment.

50. The acts of Defendants were committed willfully, wantonly, maliciously, intentionally, outrageously, deliberately and/or by conduct so egregious as to shock the conscience.

51. The acts and omissions of the undivided Defendants were committed without cautious regard to due care, and with such wanton and reckless disregard of the consequences as to show Defendants' indifference to the danger of harm and injury.

52. The individual Defendants conspired to inflict harm on Plaintiff and deprive him constitutional rights.

53. Defendants made statements to police, the district attorney and others in order to conceal their unlawful and unconstitutional conduct and in an attempt to deny Plaintiff to due process.

54. Defendants engaged in the aforesaid conduct for the purpose of violating Plaintiff's constitutional rights by subjecting him to unreasonable search and seizure, depriving Plaintiff of property and liberty without due process of law, subjecting Plaintiff to excessive force, unlawful arrest, malicious prosecution, retaliated against him, and attempting to deprive Plaintiff to due process.

55. As a direct and proximate result of the Defendants' illegal and unconstitutional actions, Plaintiff suffered pain, fear, anxiety, embarrassment, loss of liberty, confinement, physical injuries, severe emotional trauma, and the loss of the enjoyment of life, all to his great detriment and loss.

56. As a direct and proximate cause of the Defendants' illegal and unconstitutional actions, Plaintiff suffered and continues to suffer financial loss, loss of employment and deprivation of other liberty interests to his great financial detriment and loss.

## FIRST CAUSE OF ACTION
## FEDERAL CIVIL RIGHTS VIOLATIONS

57. The allegations set forth in paragraphs 1-56 inclusive, are incorporated herein as if fully set forth.

58. As a direct and proximate result of Defendants' above described unlawful and malicious conduct, committed under the color of state law, and while acting in that capacity, the Defendants deprived Plaintiff of the equal protection of the laws and Plaintiff's rights, privileges and immunities under the laws and the Constitution of the United States. Plaintiff's right to be free from unreasonable searches and seizures, free from excessive use of force, false arrest, false imprisonment, retaliation, malicious prosecution, termination from employment, to be secure in one's person and property, to access to the Courts, and to due process and equal protection of the law, all to plaintiff's

great detriment and loss. As a result, Plaintiff suffered grievous harm, in violation of his rights under the laws and Constitution of the United States in particular the First, Fourth and Fourteenth Amendments thereof, and 42 U.S.C. § 1983.

59. As a direct and proximate result of the acts and omissions of Defendants, Plaintiff was forced to endure great pain and mental suffering, and was deprived of physical liberty, all to Plaintiff's great detriment and loss.

60. The City of Philadelphia permitted, encouraged, tolerated, ratified and was deliberately indifferent to a pattern, practice and custom of:

    a. Unjustified, unreasonable and illegal use of process by police officers;

    b. Abuse of police powers, including excessive use of force, false arrest, malicious prosecution, retaliating against individuals for exercising their constitutional rights, harassment and improper searches;

    c. Misrepresenting facts in order to establish probable cause where none would otherwise exist;

    d. Arresting and detaining citizens without probable cause;

    e. Psychologically or emotionally unfit persons serving as police officers; and

    f. Failure of police officers to prevent, deter, report or take action against the unlawful conduct of police officers under such circumstances as presented herein.

61. Defendant, City of Philadelphia was deliberately indifferent to the need to:

    a. Test its officers for emotional and psychological fitness to serve as police officers;

b. Monitor officers whom it knew or should have known were suffering from emotional and/or psychological problems that impair their ability to function as police officers;

c. Train its police officers in the appropriate exercise of police powers;

d. Facilitated, encouraged, tolerated, ratified, and/or was deliberately indifferent to officers using their status as police officers to have persons falsely arrested, retaliated against, assaulted and maliciously prosecution or to achieve ends not reasonably related to their police duties; and

e. Failure to properly train, supervise and discipline officer officers with regard to such police practices.

62. The City of Philadelphia was deliberately indifferent to the need for more or different training, supervision, investigation or discipline in the areas of:

a. Use of information in obtaining probable cause;

b. Exercise of police powers;

c. Police officers with emotional or psychological problems;

d. Police officers use of their status as police officers to have persons falsely arrested, assaulted and maliciously prosecution and unlawfully searched or to achieve ends not reasonably related to their police duties; and

e. False arrest, malicious prosecution and evidence planting of citizens.

63. The City of Philadelphia failed to properly sanction or discipline officers, who are aware of and conceal and/or aid and abet violations of constitutional rights of citizens

by other police officers, thereby causing and encouraging police officers, including the Defendant police officers in this case, to violate the rights of citizens such as Plaintiff.

64. The foregoing acts, omissions, systemic deficiencies and deliberate indifference to the danger or harm to citizens like the Plaintiff and the need for more or different training, investigation and discipline are policies and customs of the City of Philadelphia and have caused police officers, including Defendant police officers in this case, to believe that they can violate the rights of citizens, with impunity, including the use of fraud and falsehood and to believe that such conduct would be honestly and properly investigated, all with the foreseeable result that officers are more likely to violate the constitutional rights of citizens.

65. The actions of all Defendants, acting under the color of state law and/or in concert or conspiracy with each other, deprived Plaintiff of his rights, privileges and immunities under the laws and Constitution of the United States, in particular, the rights to be secure in one's person and property, to be free from unlawful searches, from false arrest, retaliation, malicious prosecution, unlawful termination from employment and to due process of law.

66. Defendants, City of Philadelphia and the individual named Defendants, acting in concert and conspiracy with each other, have by the aforementioned actions deprived Plaintiff of his constitutional and statutory rights.

67. By these actions, all Defendants have deprived Plaintiff of his rights secured by the First, Fourth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983.

## PUNITIVE DAMAGES

68. Plaintiff re-alleges paragraphs 1-66 of this complaint as though fully set forth herein.

69. The conduct of the individual Defendants was outrageous, malicious, wanton, willful, reckless and intentionally designed to inflict harm upon Plaintiff.

70. As a result of the acts of the individual Defendants alleged in the preceding paragraphs, Plaintiff is entitled to punitive damages as to each cause of action.

## JURY DEMAND

71. Plaintiff demands a jury trial as to each Defendant and as to each count.

**WHEREFORE**, plaintiff requests the following relief:

a. Compensatory damages;

b. Punitive damages;

c. A declaratory judgment that the practices and policies complained of are unconstitutional;

d. Reasonable attorney's fees and costs; and

e. Such other and further relief as appears reasonable and just.

DATED: February 11, 2015          /s/ Michael Pileggi
                                   MICHAEL PILEGGI, ESQUIRE
                                   303 Chestnut Street
                                   Philadelphia, PA 19106
                                   (215) 627-8516