# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRANDON RUFF** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | **NO. 14-4940** |
| **LONG, et al.** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                                       **June 1, 2015**

The First and Fourteenth Amendments' guarantees of free expression without retaliation and procedural due process apply to police sergeants terminated from their position. To obtain Section 1983 protection of these rights and defeat summary judgment, the police sergeant, like all other citizens, must adduce competent threshold evidence he engaged in First Amendment expressive conduct and his employer deprived him of due process often provided in a collective bargaining agreement. On August 3, 2014, an off-duty plain clothed police sergeant appeared in a police station where he was unknown and attempted to deliver three guns *sans* explanation. He never verbalized any opinion or intent about guns. When questioned, he concealed or misrepresented his name and birthdate as well as his public position. He refused to answer further questions and left the station creating further suspicion. After discovering he was a police sergeant in another district, the City placed him in a paid, but different, position while its Internal Affairs division investigated his August 3 conduct for six months before arresting him in February 2015 for lying to the police (with the criminal trial still pending) and then terminating his employment a month later. At all times, he is subject to a collective bargaining agreement. While the police officers' possible violations of the sergeant's Fourth Amendment rights will be resolved by the jury, we find no issues of material fact allowing the First and Fourteenth

Amendment or *Monell* claims to proceed. In the accompanying Order, we grant Defendants' motion for partial summary judgment finding no expressive conduct requisite for a First Amendment retaliation claim, the collective bargaining agreement provided due process and there is no evidence the City failed to train or supervise its officers when addressing this unique situation under the well established *Monell* rubric.

I. *Undisputed Material Facts[1]*

Plaintiff Brandon Ruff ("Ruff") was a City of Philadelphia ("City") police sergeant, assigned to the 16th District, as of August 3, 2014. Off-duty and wearing plain clothes on August 3, 2014, Ruff walked into the 35th Police District carrying a bag with three firearms which he planned to turn in believing that the City of Philadelphia permitted such activity under a "no questions asked" policy. He did not tell anyone at the 35th District of his job.

Ruff, when asked for identification, told the officers that he did not have his driver's license or state identification. Ruff never told the police officers of any intent to remove guns from the street or make Philadelphia safer. The parties dispute whether Ruff then left the station to make a phone call outside, or whether he attempted to leave to avoid further questioning, but agree that the 35th District officers followed him outside. Ruff alleges that one of the officers observed that he was carrying a gun in a holster, confiscated the weapon, and placed him in handcuffs and under arrest. The police detained Ruff at the police station for some time. Two lieutenants then followed him to his home and relieved him of his service weapon. The

---

[1] There are many disputed facts but none material to our summary disposition of several of Ruff's claims. We derive these undisputed material facts from Plaintiff's Second Amended Complaint (ECF Doc. No. 31), Defendants' Statement of Undisputed Facts (ECF Doc. No. 41-2) Plaintiff's Response (ECF Doc. No. 48), Plaintiff's Statement of Undisputed Facts (ECF Doc. No. 49) and admissions during oral argument.

2

following day, the City removed Ruff from street duty and assigned him to Differentiated Police Response unit ("DPR").

On August 4, 2014, the police department's Internal Affairs division began investigating Ruff's August 3 activities at the 35th District. The City did not reduce his pay while on DPR. On August 25, 2014, Ruff filed an initial Complaint alleging the City and its officers violated his First, Fourth and Fourteenth Amendment rights. Ruff remained on DPR until Internal Affairs completed its investigation. On February 2, 2015, the District Attorney arrested Ruff and charged him with one count of False Identification to Law Enforcement Authorities and gave him a thirty (30) day notice of intent to terminate his employment. On March 5, 2015, the City dismissed Ruff from his employment determining he engaged in conduct unbecoming of a police officer in violation of the Police Code. The criminal charges of providing false identification to a police officer remain pending in state court.

## II. *Standard of Review*

Ruff sues the City and individual police officers under 42 U.S.C. §1983 asserting (1) unlawful retaliation for exercising his First Amendment rights to protected speech and conduct; (2) deprivation of procedural due process[2]; and (3) unreasonable force and unlawful arrest under the Fourth Amendment. In addition, Ruff seeks to hold the Philadelphia liable under a *Monell*[3] theory for failure to train and supervise its police force on proper procedures for arrest.

Defendants move for partial summary judgment arguing (1) no liability against the City directly under *Monell*; (2) Defendants are entitled to judgment on First Amendment retaliation

---

[2] In oral argument, Ruff clarified he is not pursuing a substantive due process claim.

[3] *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

3

claims as a matter of law; and, (3) no basis for a procedural due process claim as a matter of law.[4]

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007), citing Fed. Rule Civ. Proc. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.*, citing *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.*, quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986)(emphasis in original); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

At this stage, our function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *Woods v. Pettine*, No. 12-5608, 2015 WL 1072687, at *3 (E.D. Pa. Mar. 12, 2015). Where a non-moving party fails to sufficiently establish the existence of an essential element of its case on which it bears the burden of proof at trial, there is not a genuine dispute with respect to a material fact and the moving

---

[4] Defendants did not move for summary judgment on Ruff's Fourth Amendment claim against the police officer defendants. This claim proceeds to trial.

4

party is entitled to judgment as a matter of law. *Tillman v. Redevelopment Auth. of the City of Philadelphia,* No. 12-1505, 2013 WL 5594701, at *3-4 (E.D.Pa. Oct. 11, 2013) (internal citation omitted) *aff'd,* No. 13-4424, 2015 WL 294638 (3d Cir. Jan. 23, 2015).

### III. *Analysis*

#### A. Ruff cannot establish a First Amendment retaliation claim.

To defeat summary judgment on his First Amendment retaliation claim, Ruff must show evidence his anonymous August 3, 2014 gun delivery to the 35th District[5]: (1) is protected speech or activity afforded First Amendment protection; (2) Defendants inflicted adverse action in response to his August 3, 2014 protected activity sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) has a causal link to the August 4, 2014 DPR assignment with pay, February 2015 arrest and March 2015 termination. *Thomas v. Independence Township,* 463 F.3d 285, 296 (3d Cir. 2006).

*Does Ruff's August 3, 2014 anonymous gun delivery constitute protected expression?*

Ruff alleges his anonymous August 3, 2014 gun delivery to the 35th District is protected First Amendment "speech" insofar as these actions are akin to stating the community should be

---

[5] Ruff also claims filing *this lawsuit* on August 25, 2014 constitutes protected First Amendment speech. Ruff alleges Defendants placed him in DPR on August 4, 2014 (three weeks before the lawsuit) and he was forced to suffer "continuation of DPR" after filing this lawsuit. This is not sufficient to sustain a First Amendment claim. Ruff admits the claimed retaliatory act – being placed on DPR – occurred prior to filing his lawsuit. We have concerns over whether being placed on DPR or "desk duty" is sufficient retaliatory conduct at all. Although Ruff's job responsibilities changed, there is no allegation the City discharged, demoted or reduced Ruff's pay or hours. During oral argument, Ruff also stated his termination six months later *as a result of filing this lawsuit* is an additional basis for a First Amendment claim, and there is a causal connection between filing this lawsuit and the termination. We find Ruff cannot sustain a First Amendment retaliation claim under these circumstances, as there is no evidence linking the *lawsuit* to his termination.

5

free of guns and violence. We do not agree. Ruff has not cited any case law to support this theory.

Ruff alleges he was acting as a private citizen, and not as a public employee, when he engaged in his so-called protected activity, and therefore the public employee/public employee balancing test directed by *Garcetti v. Ceballos*, 547 U.S. 410 (2006) does not apply. Whether Ruff acted as a private citizen or public employee in this instance is inconsequential. First Amendment retaliation claims by either private citizens or public employees still require an initial showing of speech or conduct protected by the First Amendment. *See Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 793 (3d Cir. 2000); *Suarez Corp. Indus. V. McGraw*, 202 F.3d 676, 685 (4th Cir.2000).

The parties agree that on August 3, 2014, Ruff entered the 35th District with a bag containing three guns. Ruff stated he was there to "turn some firearms in," pursuant to what he perceived to be a "no questions asked" police policy and attempted to do so anonymously, never identifying himself as a police sergeant.[6] Ruff admits he told the officers inquiring into his identity he did not have his driver's license or state identification on him. Ruff does not allege he uttered any words to the effect he was there to rid the community of gun violence during this event, and neither party directed the Court to evidence of such statements made by Ruff that evening.[7] Ruff's behavior is only afforded First Amendment protection if we construe it as expressive conduct. This is a threshold question of law.

---

[6] Defendants factually contest a policy ever existed, but these disputed facts are not relevant to whether Ruff's August 3, 2014 conduct is an expression protected by the First Amendment.

[7] The Court examined Ruff's Supplemental Statement of Undisputed Facts (ECF Doc. No. 49) which cites Appx. 4 in support of his claim he was turning in the guns in an attempt to "help stop violence." There is no allegation Ruff communicated this intent to the officers at the 35th

6

We analyze Ruff's conduct mindful of the Supreme Court's admonition "[w]e cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' ...." *United States v. O'Brien*, 391 U.S. 367, 376 (1968); *Texas v. Johnson*, 491 U.S. 397, 404 (1989); *Spence v. Washington*, 418 U.S. 405, 409. "[I]t is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies." *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 161 (3d Cir. 2002) (citing *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293, n.5 (1984)).

"Expressive conduct exists where 'an intent to convey a particularized message was present, and the likelihood was great that the message would be understood by those who viewed it.'" *Egolf v. Witmer*, 421 F.Supp.2d 858, 868 (E.D.Pa. 2006) (quoting *Texas v. Johnson*, 491 U.S. 397, 404 (1989)). As the Supreme Court explained in *Johnson*, we recognize expressive conduct in the areas of picketing, armband-wearing, flag-waving and flag-burning. *Johnson*, 491 U.S. at 404. "Conduct is protected by the First Amendment when the 'nature of [the] activity, combined with the factual context and environment in which it was undertaken', shows that the 'activity was sufficiently imbued with elements of communication to fall within the First Amendment's scope.'" *Tenafly*, 309 F.3d at 158 (quoting *Spence v. Washington*, 418 U.S. 405, 409-10 (1974), *Troster v. Pa.State Dept. of Corrections*, 65 F.3d 1086, 1090 (3d Cir. 1995)). In addition, "[c]ontext is crucial to evaluating an expressive conduct claim because 'the context may give meaning to the symbol' or act in question." *Id.* (citation omitted). The conduct meeting the test is direct and expressive; the Court is not left guessing as to the "expression" intended by the conduct.

---

District, and the Court is left only to examine whether, in context, Ruff's conduct may be considered to have communicated a protected form of expression.

7

The Court of Appeals directs:

> [Conduct is expressive] [i]f, considering the nature of [the] activity, combined with the factual context and environment in which it was undertaken, we are led to the conclusion that the activity was sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments. ... this is a fact-sensitive, context-dependent inquiry and [] the putative speaker bears the burden of proving that his or conduct is expressive.

*Tenafly*, 309 F.3d at 160-61 (internal quotations omitted) (citation and footnote omitted), citing *Troster*, 65 F.3d at 1090; *see also Heffernan v. City of Paterson*, 2 F.Supp. 3d 563, 572 (D.N.J. 2014) *aff'd*, 777 F.3d 147 (3d Cir. 2015).

Applying this standard, we conclude Ruff cannot meet his burden of demonstrating his conduct of anonymously appearing at the 35th District station with a bag containing three firearms purportedly pursuant to a "no questions asked" amnesty program is "sufficiently imbued with elements of communication" to be deemed expressive conduct. Ruff directs us to no factual evidence, other than his own explanation after the event, showing at the time he entered the 35th District, he actually asserted anything to anyone. There is no evidence any of the officers at the 35th District *understood* Ruff to communicate any idea or message. To the contrary, the Defendant officers' testimony confirms Ruff's secretive conduct raised uncertainty and suspicions about his intentions.

Post-conduct explanations of Ruff's "secret" intent, raised after he is stopped for suspicious activity or files suit, cannot create questions of fact unless there is evidence showing First Amendment expression at the time of the conduct. Silence, concealed intent and then curious anonymity, under the facts presented here, does not constitute First Amendment protected activity. To the contrary, the admitted lengths Ruff went to concealing his identity and the gun delivery in a district other than his home district evidence intent to avoid First Amendment expression. He did not want anyone to discover his views or his conduct. He

8

didn't tell anyone, and he concealed his alleged purposes. If he thought the City had a policy allowing citizens to turn in guns, he could have done so at his 16th District station or adduced evidence he at least talked about this "policy" with someone. While protestors wearing armbands or burning the flag may not advertise their names and addresses, they at least evidence an intent of expressive conduct at the time of their actions. Protection under the First Amendment requires some expressive activity. Ruff can show no genuine issue of material fact to provide conduct evidencing protected expression.

As in *Troster* and *Tenafly*, we find Ruff offered nothing more than a "bare assertion" his conduct is expressive. Because this bare assertion falls short of his burden of proof, Ruff cannot proceed on his claim for First Amendment retaliation. Because we hold Ruff's conduct under the particular facts of this case is not protected expression of First Amendment rights, it is unnecessary to decide whether Ruff's so-called speech occurred as a public or private citizen. As a matter of law, Defendants' acts subsequent to Ruff's activity at the 35th District cannot give rise to a claim of retaliation for exercising First Amendment rights. Defendant's Motion for Partial Summary Judgment on Plaintiff's claim for First Amendment Retaliation is granted, and this claim is dismissed.[8]

### B. Ruff cannot show Defendants deprived him of procedural due process.

Ruff's claim the City terminated him in violation of his Fourteenth Amendment procedural due process rights also cannot survive summary judgment. To proceed to trial on his procedural due process claim, Ruff must show questions of material fact evidencing Defendants

---

[8] Ruff also does not direct us to evidence supporting a causal connection between the alleged "protected activity" and his termination. *See e.g. Gorum v. Sessions*, 561 F.3d 179, 188 (3d Cir. 2009). Our review of the evidence did not reveal any disputed facts which could be construed to support Ruff's claim the City retaliated against him because of a later disclosed desire to make a statement against guns and gun violence.

9

1) deprived him of a protected property or liberty interest, and 2) the City's available procedures did not provide due process of law. *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006); *Arneault v. O'Toole*, 864 F. Supp. 2d 361, 395 (W.D. Pa. 2012) *aff'd on other grounds*, 513 F. App'x 195 (3d Cir. 2013).

Defendants do not contest Ruff's property interest in his public employment as a police officer. Instead, Defendants argue Ruff has not produced evidence the procedures available to him were inadequate. *Hill, supra*, 455 F.3d at 234; *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 138 (3d Cir.2010). We agree.

A state affords requisite due process when it provides reasonable remedies to rectify legal errors by an administrative body. *MFS, Inc. v. DiLazaro*, 771 F. Supp. 2d 382, 436 (E.D. Pa. 2011) *aff'd*, 476 F. App'x 282 (3d Cir. 2012) (citing *Cohen v. City of Philadelphia*, 736 F.2d 81, 86 (3d Cir.1984), *cert. denied*, 469 U.S. 1019 (1984)). Due process requires an "opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)(citing *Armstrong v. Manzo*, 380 U.S. 545 552 (1965)). We agree the grievance procedures available to Ruff as a member of the Fraternal Order of Police ("FOP") provided adequate opportunity for Ruff to challenge his proposed termination, and to obtain meaningful review prior to being terminated from his public employment.[9] The due process clause is not intended to *protect* Ruff from being terminated from public employment; only that he not be terminated without meaningful opportunity to contest the proposed action. We hold Ruff failed to identify any disputed facts to suggest the City deprived him of a meaningful opportunity to be

---

[9] Although Ruff claims being placed on DPR was a "constructive termination," he points to no evidence in support. To the contrary, Ruff continued to work and continued to receive his usual salary while assigned to the DPR unit.

10

heard and oppose termination. As such, Ruff failed to offer sufficient facts to avoid summary judgment on his procedural due process claim.

Our Court of Appeals directs "in cases in which 'a due process claim is raised against a public employer, and grievance and arbitration procedures are in place, ... those procedures satisfy due process requirements even if the hearing conducted by the employer . . . [is] inherently biased.'" *Leheny v. City of Pittsburgh*, 183 F.3d 220, 228 (3d Cir. 1999) (quoting *Dykes v. Southeastern Pa. Trans. Auth*, 68 F.3d 1564, 1571 (3d Cir. 1995)); *Bright v. City of Chester*, No. 06-3654, 2007 WL 177399 (E.D. Pa. 2007).

As a police officer, Ruff agreed to an FOP collective bargaining agreement ("CBA"), which contains procedures for grievance and arbitration of disputes. Ruff takes issue with the investigation conducted by Internal Affairs and the parties factually dispute whether those procedures afforded Ruff an opportunity to state his position in that investigation. This factual disagreement, however, is not relevant to Ruff's procedural due process claim. Ruff does not contend his CBA fails to provide a process for initiating a grievance against the police department; he does not contend the Defendants prevented him from utilizing the grievance procedures provided in the CBA; nor does he contend that the procedures made available were somehow inadequate to ensure he was not deprived of any protected property right without due process of law.

### C. Ruff does not establish genuine issues to sustain a *Monell* claim

The City moves for summary judgment on all claims under *Monell*. To proceed to trial against the City, Ruff must show disputed issues of material fact as to whether the City itself supported the violation of his First, Fourth and Fourteenth Amendment rights. Section 1983 liability attaches to the City only when "execution of a government's policy or custom, whether

11

made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.*, 436 U.S. at 694.

A government policy or custom can be established in two ways. Policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481 (1986). A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well settled" as to virtually constitute law. *Monell,* 436 U.S. at 690 (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167-68 (1970)). The Supreme Court directs "appropriate circumstances" will warrant the imposition of municipal liability for a "single decision by municipal policymakers." *Pembaur,* 475 U.S. at 480.

Ruff contends the City is liable under a line of cases that impose municipal liability for a failure to adequately train and supervise employees. "[An] inadequacy of ... training may serve as the basis of section 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom [municipal employees] come into contact." *City of Canton vs. Harris,* 489 U.S. 378, 388 (1989). The inadequate training must be the result of some "conscious" or "deliberate" choice. *Id.*

There is no evidence the City failed to adequately train officers concerning the presence of an anonymous person making a gun delivery or regarding the enforcement of the CBA. There is no evidence the City failed to train its officers on arrest and detention protocols when faced with a person making a gun delivery concealing his identity and leaving the station when questioned. Ruff does not direct us to factual evidence from which a jury could find the City liable for failure to train or supervise its employees regarding the specific issues presented by

Ruff's August 3, 2014 conduct at the 35th District. Summary judgment will be granted in favor of Defendants on Plaintiff's *Monell* claim.

## IV. *Conclusion*

The parties factually dispute the precise events of August 3, 2014 leading to the Internal Affairs investigation, the August 4, 2014 DPR, the February 2015 arrest, and March 2015 termination. These disputed facts may be relevant to Ruff's Fourth Amendment claim proceeding to trial later this month. They do not, however, create genuine issues of material fact on Ruff's First Amendment retaliation claim as he did not engage in First Amendment protected activity. These factual disputes do not change the material fact the City provided him with due process through his CBA. These factual disputes also do not evidence the City's lack of training or supervision necessary to sustain a *Monell* claim. In the accompanying Order, we grant Defendants' Motion for Partial Summary Judgment on Ruff's First Amendment retaliation claim, Fourteenth Amendment procedural due process claim, and *Monell* claim.